**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| OSCAR JOSUE MORAN-SIERRA,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Respondents. | Case No. 5:26-cv-06427-DFM<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Oscar Josue Moran-Sierra filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his civil immigration detention beginning October 15, 2026. See Dkt. 1 ("Petition"). Respondents answered, see Dkt. 8 ("Answer"), and Petitioner replied, see Dkt. 9 ("Reply").

Petitioner primarily seeks release on his previously applicable conditions because the Government deprived him of his liberty without constitutionally adequate process. He also seeks an injunction governing any future re-detention. For the reasons set forth below, the Petition is **GRANTED** in part.

## I. BACKGROUND

Petitioner is a native and citizen of Honduras who entered the United States with his mother in 2016, when he was fourteen. See Petition ¶¶ 2, 10, 16; Answer, Ex. B ("NTA") at 2. On October 1, 2016, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Petitioner as

inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). See NTA at 2. A few days later, Petitioner and his family were released on a Form I-220A Order of Recognizance. See Petition ¶¶ 2, 16; Answer, Ex. A ("Form I-213") at 4. For a decade, Petitioner remained at liberty under supervision, reporting to U.S. Immigration and Customs Enforcement ("ICE") and attending appointments. See Petition ¶ 18. Petitioner has grown up in the United States, obtained employment authorization which remains valid, and became the father of a United States citizen son. See id. ¶¶ 2, 17.

On July 13, 2026, an Immigration Judge ("IJ") denied Petitioner and his family's claims for immigration relief and ordered removal to Honduras. See Dkt. 1-1. Through immigration counsel, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"). See Dkt. 1-2. The appeal remains pending. See Dkt. 1-4; Form I-213 at 4.

On August 24, 2026, local police arrested Petitioner for violation of California Penal Code sections 273.5(A) and 422(A). See Form I-213 at 4. Petitioner denies the underlying allegation. See Reply at 2, 7. Petitioner contends the allegation arose amidst a custody dispute with his son's mother, with whom he is no longer in a relationship. Id. at 9, 17. The record indicates that the charges remain pending. See id. at 10-11. Petitioner has no prior criminal history. Id. at 7-8.

On October 15, 2026, ICE officers took Petitioner into custody at a scheduled appointment. See Form I-213 at 3. The Form I-213 records the officers' invocation of the Laken Riley Act. See id. at 3-4. The Form I-213 notes that Petitioner "was informed of his Laken Riley Act violation and was subject to a custody redetermination." Id. at 3. The Form I-213 states that Petitioner does not have children or dependents. Id. at 2.

The record indicates that Petitioner was served with a Form I-200 administrative warrant and a Form I-286 notice of custody determination on

the date of his re-detention. See id. at 4; see also Answer, Exs. C-D. Neither reference the August 24, 2026 arrest or other purportedly changed circumstances. See Answer, Exs. C-D. Petitioner maintains that he was given neither notice of the reasons for the revocation of his release nor an opportunity to respond before the decision was made. See Reply at 13. Petitioner remains detained at the Adelanto ICE Processing Center. See Dkt. 1-3.

## II. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the lawfulness of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).

Despite his removal order, Petitioner's detention authority has not shifted to § 1231; his BIA appeal remains pending and, thus, his removal order is not yet administratively final. See 8 C.F.R. § 1241.1. Although the Form I-213 referenced the Laken Riley Act, see Form I-213 at 4, Respondents have not argued that Petitioner is mandatorily detained per § 1226(c), see Answer at 8-9. On this record, it does not appear that § 1226(c) applies; the record does not show that Petitioner's alleged criminal conduct resulted in the requisite "serious" injury. Compare 8 U.S.C. § 1226(c)(1)(E)(ii) (mandating detention for a noncitizen who is inadmissible under § 1182(a)(6)(A) and is arrested for or charged with "any crime that results in death or serious bodily injury to another person"), with California Penal Code section 273.5(d) (defining "traumatic condition" to include injuries "of a minor or serious nature"); see also Diaz Penaloza v. Mullin, No. 26-0246, 2026 WL 972846, at *1 (C.D. Cal. Apr. 9, 2026) (discussing the interplay of the Laken Riley Act and § 273.5 and ordering respondents to show cause).

## A. Exhaustion Does Not Bar the Petition

Respondents argue that Petitioner must first undergo a bond hearing before an IJ. See Answer at 7-8. A noncitizen ordinarily must exhaust administrative custody remedies before seeking habeas review. An unexhausted petition ordinarily should be dismissed without prejudice or stayed unless exhaustion is excused, and the petitioner must establish grounds for excusal. See Leonardo v. Crawford, 646 F.3d 1157, 1159-61 (9th Cir. 2011). In this context, exhaustion is prudential. See id. Courts may waive it where, among other things, "administrative remedies are inadequate or not efficacious" or "irreparable injury will result." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted). Errors that lie "outside the BIA's ken" need not be exhausted. Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995).

Respondents' own exhibit shows that Petitioner requested IJ review on the day of his re-detention. See Dkt. 8-4 at 2. Nothing in the record indicates that Petitioner has received custody redetermination proceedings in the weeks since his re-detention.

More fundamentally, Petitioner's primary claim is that, in his circumstances, the Fifth Amendment Due Process Clause required process before the Government replaced a decade of supervised liberty with confinement. See Petition at 23. An ordinary bond hearing could result in release, but it could not supply the advance process Petitioner claims was required or resolve his constitutional challenge to its omission. See Zhao v. Janecha, No. 26-5025, 2026 WL 2666865, at *3 (C.D. Cal. Sept. 9, 2026) ("The present Petition claims a deprivation of constitutional due process, a claim not within the jurisdiction of the immigration judge or the Board of Immigration Appeals."); Yu v. Giles, No. 26-4692, 2026 WL 2455945, at *3 (C.D. Cal. Aug. 21, 2026) (same); R.N.G. v. Semaia, 838 F. Supp. 3d. 1035,

1042-43 (C.D. Cal. 2026) (same). Thus, the Court will proceed to consider the merits of Petitioner's procedural due process claim.

**B. Procedural Due Process**

The Fifth Amendment Due Process Clause protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Due Process Clause protects. Zadvydas, 533 U.S. at 690, 693.

In Morrissey v. Brewer, the Supreme Court recognized that the decision to release a person from custody creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit have consistently held that this principle extends to noncitizens released by immigration authorities pending removal proceedings. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [petitioner] have a liberty interest in remaining out of custody on bond." (citations omitted)); Garro Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citation omitted)); Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that [p]etitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process.").

Here, Petitioner was released by immigration authorities on a Form I-220A Order of Release on Recognizance in 2016. See Form I-213 at 4. Since then, Petitioner has lived and worked in the community, obtained employment authorization, complied with the conditions of his release, and became the father of a United States citizen son. See Petition ¶¶ 2, 27. His release and period of conditional freedom created a constitutionally protected liberty interest in remaining out of detention. See Doe v. Becerra, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025).

Even assuming Petitioner's August 24, 2026 arrest constituted changed circumstances that could justify his re-detention, the existence of changed circumstances does not excuse the Government from providing constitutionally adequate process before re-detaining a noncitizen who has been living at liberty. Due process protects Petitioner's liberty interest in remaining out of detention. See C.A.R.V. v. Wofford, No. 25-01395, 2025 WL 3059549, at *9-10 (E.D. Cal. Nov. 3, 2025) (finding a constitutionally protected liberty interest based on "approximately four years on parole" preceding re-detention); Aguilar v. Semaia, No. 26-0023, 2026 WL 166906, at *4 (C.D. Cal. Jan. 16, 2026) (same, based on four years under Order of Supervision).

To determine what procedures are constitutionally required to protect a liberty interest, courts apply the three-part test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens of additional procedural requirements. The Ninth Circuit has observed that Mathews is "a flexible test that can and must account for the heightened

governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (citations omitted).

The first Mathews factor strongly favors Petitioner. His confinement deprived him of the conditional physical freedom he enjoyed for approximately a decade. His years of residence in the United States, family ties, and work history give concrete content to that interest. See Petition ¶¶ 2, 36. His continued liberty interest in remaining on conditional release is undermined by his immigration detention without a pre-detention hearing. See Doe, 787 F. Supp. 3d at 1093-94.

The Court recognizes the limitations on that interest. Petitioner was conditionally released pending his removal proceedings; an IJ ordered removal in July 2026; and the pending BIA appeal does not guarantee relief. Petitioner's detention also has lasted for approximately one month, not the prolonged period at issue in some immigration habeas cases. But while these considerations prevent treating his liberty as an entitlement to remain indefinitely in the United States, they do not diminish physical freedom to an interest that can be displaced without examining what process was feasible and required.

The second factor also favors Petitioner. On this record, ICE re-detained him without meaningful advance notice of the reasons physical custody was considered necessary, disclosure of supporting evidence, or neutral consideration of flight risk, danger, and alternatives. See Reply at 12-14. His removal proceedings provide custody authority under the Immigration and Nationality Act ("INA"), but does not resolve whether immediate confinement was necessary in Petitioner's individual circumstances.

Moreover, on this record, Petitioner's re-detention rested on a legal position Respondents have since abandoned. As discussed above, the arresting officers invoked § 1226(c), but Respondents rely on § 1226(a) in their Answer.

See Answer at 8-9. The current record does not supply the predicate criminal conduct to mandate detention under 8 U.S.C. § 1226(c)(1)(E). Advance notice and a meaningful opportunity to respond before a neutral decisionmaker would have permitted Petitioner to respond to the officers' invocation of the Laken Riley Act, as well as consideration of factors including Petitioner's undisputed years of compliance with immigration supervision and family ties. Those facts could support appearance and effective supervision outside detention. The same procedure could have tested contrary evidence, including the circumstances of Petitioner's August 24, 2026 arrest.

An ordinary § 1226(a) hearing is a meaningful safeguard, and the Court does not presume otherwise. Rodriguez Diaz upheld that statutory framework, including the noncitizen's burden at an ordinary custody hearing, and rejected a claimed entitlement to a second hearing with a shifted burden. See 53 F.4th at 1207-13. But that decision did not foreclose every as-applied challenge, and the petitioner had received a custody redetermination hearing. See id. at 1194, 1213. Petitioner challenges the timing of his initial loss of established liberty on a record containing no neutral custody determination. The availability of later process—which, on this record, has not occurred—does not, without more, establish that postponing process was constitutionally sufficient here.

As to the third factor, the Government has substantial interests in enforcing immigration law, ensuring appearance, protecting the community, and avoiding unnecessary administrative burdens. Those interests carry weight in this context. See id. at 1206-07. The Court therefore does not treat the civil character of immigration detention as eliminating the public interest in confinement or assume that arranging advance review imposes no cost.

Even so, the third factor slightly favors Petitioner on this record. ICE did not act on Petitioner's August 24, 2026 arrest for well over a month; ICE did not re-detain Petitioner until the scheduled October 15, 2026 appearance. In

the interim, Respondents knew where Petitioner lived and declined to take him into custody. Respondents supply no evidence that advance notice would have prompted flight, that an emergency required immediate immigration confinement, or that some other circumstance made advance process impracticable. While Petitioner's August 24, 2026 arrest could have led to new and material information, Respondents have not identified that information, described the incident, or explained why it required detention before a neutral assessment could occur. In sum, under these circumstances, the Government's interest in detaining Petitioner without a pre-deprivation hearing is low. See Hasratyan v. Bondi, No. 26-210, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026).

Respondents' objection that the INA does not provide for a pre-detention hearing identifies a limitation on a particular administrative regime. See Answer at 2 (citing 8 U.S.C. § 1231). It does not establish that the Government's interest required Petitioner's immediate confinement without constitutionally adequate process. The remedy below does not enlarge an IJ's jurisdiction, prescribe regulations, or direct an IJ to conduct a proceeding outside lawful authority. The Court decides only whether Respondents may continue the detention challenged here.

Taken together, the Mathews factors favor Petitioner. His substantial interest in established physical liberty, the value of an opportunity to test the grounds for confinement, and the absence of a demonstrated need to defer that process outweigh the Government's asserted interests in proceeding as it did. Under these circumstances, due process required advance notice of the asserted grounds for detention and a meaningful opportunity to contest them before a neutral decisionmaker.

## C. Remedy

Having concluded that Respondents violated Petitioner's procedural due process rights, the Court turns to the appropriate remedy.

After applying the Mathews test, the Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (citations omitted). Certainly, there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. See id. at 128. However, absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process. See Guillermo M. R., 791 F. Supp. 3d at 1036.

Here, based on the record before the Court, Respondents have made no showing of any urgency that would justify bypassing pre-detention process. Immediate release is therefore the appropriate remedy. The violation found here concerns the deprivation of Petitioner's established liberty without process that should have come before confinement. Requiring him to remain detained for another week while awaiting a bond hearing would extend that deprivation. Release on the previously applicable conditions restores the liberty of which he was unconstitutionally deprived. See Jorge M.F. v. Jennings, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); see also E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

Petitioner challenges the constitutional adequacy of the process supporting his present civil confinement, and the record identifies no intervening neutral custody determination providing an independent basis for continuing that confinement. On the violation and record before the Court, an order offering only later process would fail to restore the liberty wrongfully taken. On this record, immediate release, rather a bond hearing, is warranted. See Jorge M.F., 534 F. Supp. 3d at 1055.

Petitioner also requests an injunction forbidding any future re-detention. See Petition at 26. The Court declines to order that broader relief. Whether future re-detention would be lawful would depend on the facts, statutory authority, and procedures then presented. The present record does not warrant prescribing a burden of proof for all future custody proceedings or adjudicating circumstances that have not occurred. This denial is without prejudice to a challenge to any future detention. In light of the disposition herein, the Court declines to address Petitioner's remaining claims.

## III. ORDER

IT IS THEREFORE ORDERED that:

1. The Petition is **GRANTED** in part. Petitioner's detention challenged in this action beginning October 15, 2026 violates the Due Process Clause of the Fifth Amendment for the reasons stated above.

2. Respondents shall immediately release Petitioner Oscar Josue Moran-Sierra (A# 209-434-659) from the immigration custody challenged in this action on the conditions in effect immediately prior to his October 15, 2026 re-detention. Upon release, Respondents shall return to Petitioner his property and documents taken in connection with his October 15, 2026 re-detention.

3. Within three (3) days, Respondents shall file a status report confirming compliance with paragraph 2.

4. Petitioner's remaining requests are **DENIED** without prejudice.

Date: November 13, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge